UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOISES RODRIGUEZ-TORRES,<br><br>    Petitioner,<br><br>    v.<br><br>MICHAEL L. BENOV, Warden,<br><br>    Respondent. | Case No.: 1:11-cv-00169-LJO-JLT<br><br>FINDINGS AND RECOMMENDATIONS TO DENY PETITION FOR WRIT OF HABEAS CORPUS  (Doc. 1)<br><br>ORDER DIRECTING THAT OBJECTIONS BE FILED WITHIN TWENTY DAYS |

    Petitioner is a federal prisoner proceeding in propria persona with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.

**PROCEDURAL HISTORY**

    The instant petition was filed on January 31, 2011, challenging the results of an October 29, 2010 prison disciplinary hearing following which Petitioner was found guilty of two violations of prison disciplinary rules and sanctioned with the loss of 13 days' credits for each offense. (Doc. 1). On February 17, 2011, the Court ordered Respondent to file a response. (Doc. 5). On April 18, 2011, Respondent filed the Answer. (Doc. 9). On April 27, 2011, Petitioner filed his Traverse. (Doc. 12).

**JURISDICTION AND VENUE**

    Writ of habeas corpus relief extends to a person in custody under the authority of the United States. See 28 U.S.C. § 2241. While a federal prisoner who wishes to challenge the validity or

constitutionality of his conviction must bring a petition for writ of habeas corpus under 28 U.S.C. § 2255, a petitioner challenging the manner, location, or conditions of that sentence's execution must bring a petition for writ of habeas corpus under 28 U.S.C. § 2241. See, e.g., Capaldi v. Pontesso, 135 F.3d 1122, 1123 (6th Cir. 1998); United States v. Tubwell, 37 F.3d 175, 177 (5th Cir. 1994); Kingsley v. Bureau of Prisons, 937 F.2d 26, 30 n.5 (2nd Cir. 1991); United States v. Jalili, 925 F.2d 889, 893-94 (6th Cir. 1991); Barden v. Keohane, 921 F.2d476, 478-79 (3rd Cir. 1991); United States v. Hutchings, 835 F.2d 185, 186-87 (8th Cir. 1987); Brown v. United States, 610 F.2d 672, 677 (9th Cir. 1990).  A petitioner filing a petition for writ of habeas corpus under 28 U.S.C. § 2241 must file the petition in the judicial district of the petitioner's custodian. Brown, 610 F.2d at 677.

In this case, Petitioner contends that Respondent violated his rights in the conduct of a prison disciplinary hearing that resulted in the loss of 26 days' credits.  Based upon such allegations, Petitioner is challenging the execution of his sentence rather than the imposition of that sentence.  Thus, his petition is proper under 28 U.S.C. § 2241.  In addition, because Petitioner is currently incarcerated at Taft Correctional Institute ("TCI"), Taft, California, and that facility lies within the Eastern District of California, this Court has jurisdiction to proceed to the merits of the petition. See U.S. v. Giddings, 740 F.2d 770, 772 (9th Cir.1984).

## EXHAUSTION

Federal prisoners must exhaust their administrative remedies before bringing a habeas petition pursuant to § 2241. E.g., Laing v. Ashcroft, 370 F.3d 994, 997 (9th Cir.2004); Martinez v. Roberts, 804 F.2d 570, 571 (9th Cir.1986).  Under the doctrine of exhaustion, "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed remedy has been exhausted." Laing, 370 F.3d at 998 (quoting McKart v. United States, 395 U.S. 185, 193, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969)).  If a petitioner has not properly exhausted his claims, the district court, in its discretion, may either "excuse the faulty exhaustion and reach the merits, or require the petitioner to exhaust his administrative remedies before proceeding in court." Brown v. Rison, 895 F.2d 533, 535 (9th Cir. 1990).  In the instant matter, Respondent does not contend that Petitioner has failed to exhaust his administrative remedies; hence, the Court will address the merits of Petitioner's contentions.

///

# DISCUSSION

Petitioner contends that the disciplinary hearing was flawed in that (1) Petitioner was not given the requisite 24 hours' notice, and (2) insufficient evidence was presented to support the sanction of 26 days' loss of credits. (Doc. 1, p. 3). Petitioner's claims are without merit.

A. Factual Background.

On September 7, 2010, at 11:08 a.m., a search of Petitioner's cell and property found a "Mighty Bright" reading light and a red capsule labeled "W Effexor XR 150." (Doc. 10, Ex. A). Prison staff determined that the two items were "contraband" and interviewed Petitioner regarding the items. (Id.). Petitioner told officers that his former bunk mate, "Levi," had given him the reading light and that the capsule was prescribed to him by the prison medical staff but that he had taken the capsule back to his cell rather than swallowed the pill at the time it was given. (Id.). At 7:30 a.m. on September 8, 2010, the investigation of the matter concluded with the determination that Petitioner had obtained the reading light from another inmate and that he had taken the capsule to his cell without authorization. (Id.).

Prison authorities notified Petitioner that a hearing would be conducted on the charges. (Id.). Petitioner was served with a copy of the Incident Report and advised of his rights at 12:20 p.m. on September 8, 2010. (Doc. 10, Ex. B). On September 23, 2010, a hearing was held at which Petitioner stated, "I dropped the pill on accident. I saved it in case they run out of my medication. I did get the light from my old bunk mate." (Doc. 10, Ex. B). It does not appear that any other witnesses appeared or were requested. (Id.). After the hearing, the Hearing Officer concluded that Petitioner had committed the offenses of (1) Accepting Money or Anything of Value from Another Inmate Without Staff Authorization, and (2) Misuse of Authorized Medication. (Doc. 10, Ex. B). The Hearing Officer based her findings and conclusions on prison staff investigation, the original search, and Petitioner's admission of guilt. (Id.).

The Hearing Officer sanctioned Petitioner with the loss of 13 days' credits for each of the two offenses, indicating her rationale as follows:

> You were sanctioned to disallowance of good conduct time in order to stress the seriousness of your actions and to punish you. Receiving anything of value from another inmate creates pay

and owe issues which can produce a serious threat to the safety of inmates. Misuse of authorized medication creates a serious health risk. Medical must supervise inmates['] use of prescription medications and your failure to appropriately take your medication interferes with this supervision.

(Doc. 10, Ex. B).

B.  General Law Regarding Prison Disciplinary Hearings.

Prisoners cannot be entirely deprived of their constitutional rights, but their rights may be diminished by the needs and objectives of the institutional environment. Wolff v. McDonnell, 418 U.S. 539, 555, 94 S. Ct. 2963 (1974). Prison disciplinary proceedings are not part of a criminal prosecution, so a prisoner is not afforded the full panoply of rights in such proceedings. Id. at 556. Thus, a prisoner's due process rights are moderated by the "legitimate institutional needs" of a prison. Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989), citing Superintendent, etc. v. Hill, 472 U.S. 445, 454-455, 105 S. Ct. 2768 (1984).

However, when a prison disciplinary proceeding may result in the loss of good time credits, due process requires that the prisoner receive: (1) advance written notice of at least 24 hours of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action. Hill, 472 U.S. at 454; Wolff, 418 U.S. at 563-567. In addition, due process requires that the decision be supported by "some evidence." Hill, 472 U.S. at 455, citing United States ex rel. Vatauer v. Commissioner of Immigration, 273 U.S. 103, 106 (1927).

> We hold that the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced...." United States ex rel. Vajtauer v. Commissioner of Immigration, 273 U.S., at 106, 47 S.Ct., at 304. Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board. See ibid.; United States ex rel. Tisi v. Tod, 264 U.S. 131, 133–134, 44 S.Ct. 260, 260–261, 68 L.Ed. 590 (1924); Willis v. Ciccone, 506 F.2d 1011, 1018 (C.A.8 1974).

Superintendent v. Hill, 472 U.S. at 455–56. The Constitution does not require that the evidence logically preclude any conclusion other than the conclusion reached by the disciplinary board; rather,

there need only be some evidence in order to ensure that there was some basis in fact for the decision. Superintendent v. Hill, 472 U.S. at 457.

      C.   Petitioner's Rights Were Not Denied In The Disciplinary Hearing.

           1.   Notice.

Petitioner first argues that staff became aware of the incident report at approximately 11 a.m. on September 7, 2010, but that Petitioner was not served with a copy of the incident report until 12:20 p.m. the following day, a period of slightly over twenty-five hours, a violation of prison disciplinary regulations. The claim is without merit.

At the time of the offense, Program Statement § 5270.08, Discipline and Special Housing Units, contained a page entitled, "Time Limits In Disciplinary Process." Program Statement § 5270.08, Chap. 2, p. 2.[1] That page indicates that the time period between when the staff becomes aware of an inmate's involvement in an incident and the time the staff gives the inmate notice of the charges by delivering to him a copy of the Incident Report is "*ordinarily* a maximum of 24 hours." Id. (emphasis supplied). However, the Program Statement also provides that, where appropriate, staff may conduct an investigation which shall be undertaken "promptly." Id. "The investigating officer is ordinarily appointed within 24 hours of the time the violation is reported. It is suggested that the investigation be initiated and ordinarily completed within 24 hrs. of this appointment." Id. BOP has interpreted these provisions as providing that "[i]n cases where an investigation is required[,] the date staff ["]become aware ["] changes to the date the investigation is completed and staff have determined a prohibited act has been committed." (Doc. 10, Ex. D).

Here, shortly after the incident occurred, a prison staff member commenced an investigation that concluded at 7:30 a.m. on September 8, 2010, with a recommendation that Petitioner be charged with two rules violations. Petitioner was served with the charges and advised of his rights at 12:20 p.m. on September 8, 2010, approximately five hours after the investigation concluded, and fifteen days before the hearing itself was held.

In addressing Petitioner's contention that the hearing was flawed because he did not receive

---

[1] The applicable section of the BOP's Program Statement was changed, effective August 1, 2011, to Program Statement 5270.09. The entire Program Statement may be accessed on the BOP's website: www.BOP.gov.

notice within 24 hours of the incident, three points are fatal to Petitioner's position. First, the 24 hour "rule" is nothing more than a policy of the BOP and is not enforceable as a violation of federal law under § 2241. A habeas claim cannot be sustained based solely upon the BOP's purported violation of its own program statement because noncompliance with a BOP program statement is not a violation of federal law. Reeb v. Thomas, 636 F.3d 1224, 1227 (9th cir. 2011). Program statements are "internal agency guidelines [that] may be altered by the [BOP] at will" and that are not "subject to the rigors of the Administrative Procedure Act, including public notice and comment." Jacks v. Crabtree, 114 F.3d 983, 985 n. 1 (9th Cir.1997). See also Reno v. Koray, 515 U.S. 50, 61, 115 S.Ct. 2021 (1995) (characterizing BOP program statements as simply interpretive rules); BOP Program Statement 1221.66, Chapter 2.1 (referring to BOP program statements as "policies," not rules).

Second, as discussed above, the BOP has construed its policies as modifying the initial 24-hour notice requirement in situations where an investigation is undertaken. In those cases, the 24-hour notice requirement starts when the investigation is completed, a policy that is entirely reasonable since it makes little sense to advise an inmate about charges for which a full investigation has not already been conducted. In this instance, Petitioner was advised of the charges approximately 5 hours after the investigation was completed, well within the 24-hour period.

Finally, even if some technical violation of the prison rules had occurred, Petitioner cannot credibly maintain that his federal due process rights were violated. The United States Supreme Court has indicated that it is improper to prosecute a rules violation without giving the charged inmate at least some period of time to prepare his defense. Wolff v. McDonnell, 418 U.S. 539, 564, 94 S.Ct. 2963 (1974)("At least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the Adjustment Committee."). Here, as mentioned, Petitioner had ample time, i.e., a period of approximately 13 days between the service of the notice of charges and the hearing itself, to prepare for his hearing. Moreover, the record indicates that Petitioner requested no witnesses and, indeed, admitted the violations at his hearing. Accordingly, Petitioner cannot seriously contend that the 13-day preparation period was insufficient for due process purposes.

///

    2. <u>Sanctions And Some Evidence Of Guilt</u>.

Petitioner next contends that the loss of credits was not justified, presumably a "shorthand" argument that insufficient evidence was presented to support the sanctions. Again, the claim is without merit.

As mentioned, for constitutional purposes, there need only be "some evidence" in order to ensure that there was some basis in fact for the decision. <u>Superintendent v. Hill</u>, 472 U.S. at 457. Here, the evidence was uncontroverted: the prison staff found the contraband in a search of Petitioner's cell, a subsequent investigation revealed that Petitioner had obtained the reading light from another inmate and that he had been prescribed the medication found in his cell, and, finally, Petitioner admitted the two violations at his hearing. Needless to say, such uncontroverted evidence of rules violations is more than sufficient to satisfy <u>Hill</u>'s "some evidence" standard.

Regarding the sanctions imposed by the Hearing Officer, the two offenses were classified as Code 328 and 302, respectively. (Doc. 10, Ex. B.) Program Statement 5270.08 provides that code violations in the "300" series may result in a variety of sanctions, including, inter alia, a loss of up to 30 days' credits. (Doc. 10, Ex. C., Part I). Petitioner was sanctioned with a loss of 13 days' credits for each of the two violations, a punishment well within the limits provided in the BOP's policies.

In sum, Petitioner has offered no legitimate basis for questioning the conduct and result of the challenged disciplinary hearing. Although Petitioner may not like the fact that he was found guilty or that he was sanctioned with a loss of credits, his mere dissatisfaction with the outcome of his disciplinary hearing is insufficient to warrant habeas relief under § 2241.

**RECOMMENDATION**

Accordingly, the Court RECOMMENDS that the Petition for Writ of Habeas Corpus (Doc. 1), be DENIED with prejudice on its merits.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to the case pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within twenty (20) days after being served with a copy of this Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned

1 "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the Objections shall be
2 served and filed within ten (10) court days (plus three days if served by mail) after service of the
3 Objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636
4 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the
5 right to appeal the Order of the District Court.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **June 2, 2013**                              **/s/ Jennifer L. Thurston**
                                                   UNITED STATES MAGISTRATE JUDGE